UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES CARTER,

       Petitioner,

                                      CASE NO. 5:07-CV-11611

v.                            JUDGE JOHN CORBETT O'MEARA
                                      MAGISTRATE JUDGE PAUL J. KOMIVES

GREG McQUIGGIN,

       Respondent.[1]
_____/

**REPORT AND RECOMMENDATION**

*Table of Contents*

I.    RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
II.   REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
     D.    *Voluntariness of Plea and Ineffective Assistance of Counsel (Claims I & II)* . . . . . . . . . . . . . . . 8
          1.     Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
          2.     Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     E.    *Appellate Delay (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
     F.    *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

\*    \*    \*    \*    \*

I.    RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.   REPORT:

A.    *Procedural History*

        1.     Petitioner Charles Carter is a state prisoner, currently confined at the Chippewa

---

[1]By Order entered this date, Greg McQuiggin has been substituted in place of David Bergh as the proper respondent in this action.

Correctional Facility in Kincheloe, Michigan.

2. On March 24, 1999, petitioner was convicted of one count of assault with intent to commit murder, MICH. COMP. LAWS § 750.83, pursuant to his guilty plea in the Saginaw County Circuit Court. On April 21, 1999, he was sentenced as a third habitual offender to a term of life imprisonment, consecutive to a previous sentence imposed on an unrelated conviction.

3. Petitioner filed requests for appointment of counsel in 1999 and 2000, but his requests were denied. Following the Supreme Court's decision in *Halbert v. Michigan*, 545 U.S. 605 (2005), petitioner renewed his request for counsel. On August 9, 2005, the trial court appointed appellate counsel for petitioner. On September 21, 2005, petitioner, through counsel, filed motions for acquittal, dismissal, new trial, or an evidentiary hearing. Following a hearing, the trial court denied the motions on November 4, 2005.

4. Petitioner, through counsel, filed a delayed application for leave to appeal in the Michigan Court of Appeals, raising the following claims:

   I. MR. CARTER MADE HIS PLEA WHILE IGNORANT OF THE CONSEQUENCES OF THE PLEA. THE PLEA WAS NOT KNOWING AND UNDERSTANDING AND SHOULD THEREFORE BE SET ASIDE.

   II. TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE WHERE HE WRONGLY INFORMED MR. CARTER THAT THE TRIAL COURT WOULD IMPOSE A TERM OF YEARS IF MR. CARTER PLEAD GUILTY. MR. CARTER WAS DENIED HIS FEDERAL AND STATE CONSTITUTIONAL RIGHTS TO COUNSEL. MR. CARTER IS ENTITLED TO A REMAND WITH INSTRUCTIONS THAT THE TRIAL COURT ALLOW HIM TO WITHDRAW HIS PLEA.

   III. THE CONVICTION AND SENTENCE SHOULD BE VACATED AS A MATTER OF DUE PROCESS WHERE THE TRIAL COURT ERRONEOUSLY DENIED THE APPOINTMENT OF APPELLATE COUNSEL FOR MORE THAN 6 YEARS.

The court of appeals denied petitioner's application for leave to appeal in a standard order, "for lack

of merit in the grounds presented." *People v. Carter*, No. 265310 (Mich. Ct. App. Nov. 3, 2005) (per curiam).

   5. Petitioner sought leave to appeal these issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Carter*, 475 Mich. 884, 715 N.W.2d 865 (2006).

   6. In the meantime, petitioner filed a *pro se* delayed application for leave to appeal in the Michigan Court of Appeals, challenging the trial court's denial of his post-conviction motion for relief from judgment, raising the same three claims. The court of appeals denied leave to appeal in a standard order. *See People v. Carter*, No. 267388 (Mich. Ct. App. July 10, 2006). Petitioner did not seek leave to appeal in the Michigan Supreme Court.

   7. Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on April 10, 2007. As grounds for the writ of habeas corpus, he raises the same three claims that he raised in the Michigan courts.

   8. Respondent filed his answer on November 6, 2007. He contends that petitioner's claims are without merit.

B. *Factual Background Underlying Petitioner's Conviction*

   Petitioner's plea-based conviction arises from the assault and stabbing of his girlfriend. On the date set for trial, the prosecutor indicated that defendant had informed the court that he wished to plead guilty as charged to assault with intent to commit murder and to being an habitual offender. The prosecutor emphasized that there was no plea offer or sentence agreement; that any sentence would be consecutive to a previously imposed sentence for which petitioner was on parole at the time of the crime; that the sentencing guidelines would either be 120-300 months or 180 months to

life but that they would not apply based on petitioner's habitual offender status; and that at sentencing the prosecutor would likely ask the court to impose a sentence of life imprisonment. *See* Plea Tr., at 3. Defense counsel indicated that he had informed his client of the possible sentencing ramifications as explained by the prosecutor; that he had reviewed the preliminary examination transcript with petitioner; and that in his view petitioner was "well informed of the case." *Id*. at 4. Counsel indicated that petitioner desired to plead guilty. The prosecutor then reiterated that the sentencing guidelines would not apply because of petitioner's habitual offender status; that even without the habitual offender status petitioner was facing the possibility of life imprisonment; and that the prosecutor would likely ask for a sentence of life imprisonment at the time of sentencing. *See id*. at 5.

The trial court then placed petitioner under oath, and petitioner indicated his desire to plead guilty. *See id*. at 6. Petitioner indicated that he had had a chance to discuss the matter with counsel, and that he understood the nature of the offense. *See id*. He stated that he was pleading guilty freely and voluntarily. *See id*. Petitioner confirmed that he was on parole at the time, and affirmed that he understood that any sentence in this case would be consecutive to the remainder of his sentence in the prior matter. *See id*. at 7. The court informed petitioner of the rights he was giving up by pleading guilty, including an appeal by right and appointed counsel on appeal, and petitioner indicated that he understood these rights and that he was waiving them by pleading guilty. *See id*. at 7-9. Regarding the voluntariness of his decision, the court engaged in the following colloquy with petitioner:

> THE COURT: Have there been any other threats, promises, or inducements to get you to plead guilty?
> THE DEFENDANT: No.
> THE COURT: Do you understand that you waive any claim that there [were]

| | |
|---|---|
| | any threats, promises, or inducements?  Do you understand that? |
| THE DEFENDANT: | No. |
| THE COURT: | Okay.  Do you understand that you can't come back tomorrow and claim that there was some other promise or threat or something that caused you to plead guilty here today? |
| THE DEFENDANT: | Yes, I understand. |
| THE COURT: | Do you understand that you waive any claim that it was not your own choice to enter this plea agreement? |
| THE DEFENDANT: | Yes. |
| THE COURT: | Has anybody told you what I will do or that it will go easier for you if you plead guilty? |
| THE DEFENDANT: | No. |
| THE COURT: | Has anybody threatened you in any way to get you to plead guilty? |
| THE DEFENDANT: | No. |

*Id*. at 9-10.

The court then, through defense counsel, elicited a factual basis for the plea.  Petitioner admitted that on October 8, 1998, he assaulted his girlfriend with a knife and stabbed her numerous times, and that he intended to kill her when he did so.  *See id*. at 10-12.  The court also elicited from petitioner a factual basis for his habitual offender status.  *See id*. at 12.  The prosecutor then questioned petitioner regarding the consequences of his plea:

| | |
|---|---|
| MR. PIAZZA: | . . . . Mr. Carter, do you understand that you could be facing prison for up to life, do you understand that, sir? |
| THE DEFENDANT: | Yes. |
| MR. PIAZZA: | Do you understand that there is no plea offer, there is no sentence offer, and there is no sentence agreement, do you understand that, Mr. Carter? |
| THE DEFENDANT: | Yes. |
| MR. PIAZZA: | Do you understand also that on behalf of the People we will be asking the Court to sentence you to life in prison, do you understand that, Mr. Carter? |
| THE DEFENDANT: | Yes. |

*Id*. at 13.  The prosecutor then indicated that he was unaware of any promises or sentence agreement,

and the court confirmed that it had made no indications or determinations regarding the sentence that might be imposed. *See id*. at 13. Defense counsel indicated that there had been no promises made. He also indicated that he had talked to petitioner, and felt that "he's clear of mind and head," and understood counsel. *See id*. at 14. The court then accepted petitioner's plea. *See id*. at 14.

C.   *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Amongst other amendments, the AEDPA amended the substantive standards for granting habeas relief by providing:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam)

(quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts

7

them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp.2d 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Voluntariness of Plea and Ineffective Assistance of Counsel (Claims I & II)*

Petitioner contends first contends that his guilty plea was involuntary and that counsel rendered constitutionally ineffective assistance. Specifically, he contends that his plea was involuntary because: (1) he did not understand that the court could sentence him to life imprisonment if he pleaded guilty; (2) counsel told him that he would be sentenced to a term of years if he pleaded guilty; and (3) he did not know and counsel did not advise him that he could argue for a lesser offense verdict of assault with intent to commit great bodily harm if he went to trial. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.      *Clearly Established Law*

A plea of guilty is valid if it is entered voluntarily and intelligently, as determined under the totality of the circumstances. *See Brady v. United States*, 397 U.S. 742, 748-49 (1970); *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994). The Constitution requires, for a plea to be valid, that the defendant be informed of all direct consequences of his plea. *See Brady*, 397 U.S. at 755; *King*, 17 F.3d at 153. A solemn declaration of guilt by the defendant carries a presumption of truthfulness. *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Henderson v. Morgan*, 426 U.S. 637, 648 (1976). "The subsequent presentation of conclusory allegations unsupported by specifics is subject to

summary dismissal, as are contentions that in the face of the record are wholly incredible." *Blackledge*, 431 U.S. at 74. Where the defendant "was fully aware of the likely consequences when he pleaded guilty[,] it is not unfair to expect him to live with those consequences[.]" *Mabry v. Johnson*, 467 U.S. 504, 511 (1984). Thus,

> [i]t is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked. It is also well settled that plea agreements are consistent with the requirements of voluntariness and intelligence--because each side may obtain advantages when a guilty plea is exchanged for sentencing concessions, the agreement is no less voluntary than any other bargained-for exchange.

*Id*. at 508 (footnotes omitted).

The Sixth Amendment right to counsel and the right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense. *Id*. at 687. These two components are mixed questions of law and fact. *See id*. at 698. Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697. If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." *Id.*

With respect to the performance prong of the *Strickland* inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance. *See id*. at 689; *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994). "[D]efendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound

trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690.

With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695. Where, as here, a petitioner challenges counsel's effectiveness with respect to a guilty plea, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *see also*, *O'Hara*, 24 F.3d at 828. However, with respect to the prejudice prong it is not enough for petitioner to merely allege that he would have insisted on going to trial had counsel properly advised him. As other judges of this Court have explained:

> In the guilty plea context the petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 58-59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985). Furthermore, this determination depends in large part on a prediction of what the outcome of a trial might have been. *Id*. at 58-60, 106 S.Ct. 366; *Armstead v. Scott*, 37 F.3d 202, 206 (5th Cir.1994). In other words, the petitioner must show that, but for counsel's errors, he would not have pleaded guilty, because there would have been at least a reasonable chance he would have been acquitted. If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him. A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim. Petitioner must show that there is a reasonable probability that the result of the proceeding would have been different. It is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea.

*Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.); *see also*, *Thirkield v. Pitcher,* 199 F. Supp. 2d 637, 655 (E.D. Mich. 2002) (Friedman, J.) (same); *Holtgreive v. Curtis*,

10

174 F. Supp. 2d 572, 587 (E.D. Mich. 2001) (Hood, J.) ("If examination of the totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him.").

2.   *Analysis*

Petitioner's claim that he did not understand that he could be sentence to life imprisonment if he pleaded guilty and that counsel advised him that he would be sentenced to a term of years are belied by the record.  At the plea colloquy, the prosecutor twice indicated that a life sentence was possible, and that the prosecution would likely seek a life sentence at the time of sentencing.  *See* Plea Tr., at 3, 5.  Defense counsel indicated that he had informed petitioner of this fact.  *See id*. at 5.  Upon questioning by the prosecutor, petitioner indicated that he understood that he could be sentenced to life imprisonment, there was no sentencing agreement, and that the prosecutor would be asking the court to sentence him to life in prison.  *See id*. at 13.  Petitioner also denied that any threats, promises, or inducements had been made to secure his plea, or that anyone had told him what the judge would do or that he would go easier on him if he pleaded guilty.  *See id*. at 9.  Thus, the record establishes that petitioner was repeatedly advised of the fact that he could be sentenced to life imprisonment and that the prosecutor would be seeking such a sentence, as well as that petitioner denied that any sentencing promises had been made to him.  These statements by petitioner "carry a strong presumption of verity." *Blackledge*, 431 U.S. at 74 ("Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").  As a number of Judges of this Court have observed:

> When a petitioner brings a federal habeas petition challenging his plea of guilty (or no contest), the state generally satisfies its burden by producing a transcript

> of the state court proceedings showing that the plea was made voluntarily. The factual findings of a state court that the guilty plea was properly made are generally accorded a presumption of correctness. Petitioner must overcome a heavy burden if the federal court is to overturn these findings by the state court. . . . Additionally, a habeas petitioner bears a heavy burden of rebutting the presumption that his or her guilty plea, as evidenced by the plea colloquy, is valid.

*Shanks v. Wolfenbarger*, 387 F. Supp. 2d 740, 749 (E.D. Mich. 2005) (Gadola, J.) (citations omitted); *accord Thirkield v. Pitcher*, 199 F. Supp. 2d 637, 651-52 (E.D. Mich. 2002) (Friedman, J.); *Hastings v. Yukins*, 194 F. Supp. 2d 659, 669 (E.D. Mich. 2002) (Cleland, J.); *Holtgreive v. Curtis*, 174 F. Supp. 2d 572, 586 (E.D. Mich. 2001) (Hood, J.); *Myers v. Straub*, 159 F. Supp. 2d 621, 626 (E.D. Mich.2001) (Steeh, J.).  In short where, as here, "the court has scrupulously followed the required procedure, the defendant is bound by his statements in response to that court's inquiry." *Ramos v. Rogers*, 170 F.3d 560, 566 (6th Cir. 1999) (internal quotation omitted).  In view of this standard and petitioner's statements at the plea colloquy, petitioner's arguments that he did not understand the sentencing ramifications of his plea are without merit.

Likewise, petitioner's claim that counsel advised him that he would be sentenced to a term of years rather than life imprisonment is without merit.  First, as noted above, this claim is belied by the record, which establishes that petitioner acknowledged that no one had told him what the trial judge would do or that he would go easier on petitioner if he pleaded guilty.  Second, as the Supreme Court has explained:

> Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be.  Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts.
> That a guilty plea must be intelligently made is not a requirement that all advice offered by the defendant's lawyer withstand retrospective examination in a post-conviction hearing.

*McMann v. Richardson*, 397 U.S. 759, 770 (1970). Thus, counsel's allegedly erroneous advice regarding petitioner's likely sentence does not provide a basis for habeas relief. *See Barker v. United States*, 7 F.3d 629, 633 (7th Cir. 1993). Importantly, petitioner was repeatedly informed that there was no agreement, that a life sentence was a possibility, and that the prosecutor would be seeking a life sentence. Petitioner also indicated that he understood there was no plea agreement in the case, and denied that he had been promised any thing to induce his plea. Thus, any prejudicial effect of trial counsel's erroneous advice was cured by the information provided at the plea hearing, and petitioner's plea was not involuntary because of counsel's allegedly erroneous advice. *See Christy v. Lafler*, No. 05-CV-74390-DT, 2007 WL 1648921, at *5 (E.D. Mich. June 6, 2007) (Cleland, J.); *Owczarczak v. Bock*, No. 01-10031-BC, 2004 WL 192414, at *5 (E.D. Mich. Sept. 26, 2004) (Lawson, J.); *cf. Ventura v. Meachum*, 957 F.2d 1048, 1058 (2d Cir. 1992) (internal quotation omitted) (plea not rendered involuntary by counsel's erroneous advice regarding sentencing where trial court's plea colloquy "apprised [the petitioner] of the actual sentencing possibilities.").

Finally, petitioner cannot show that his plea was involuntary because he did not understand that, at trial, he could seek a conviction on the lesser offense of assault with intent to do great bodily harm. Even assuming that counsel failed to discuss the possibility of a lesser offense conviction with petitioner and that counsel's failure to do so would render the plea invalid, *but see French v. United States*, 408 F.2d 1027, 1028 (5th Cir. 1969), petitioner cannot show prejudice because he cannot show that a lesser offense strategy was viable. As noted above, to establish prejudice–that is, to show that but for counsel's errors he would not have pleaded guilty and would have insisted on going to trial–petitioner must show that "there would have been at least a reasonable chance he would have been acquitted [or, in this case, convicted of the lesser offense]. If examination of the

13

totality of the circumstances shows that the petitioner would in all likelihood have been convicted of the same, or greater, charges after a trial, he cannot show that the advice to plead guilty prejudiced him." *Garrison v. Elo*, 156 F. Supp 2d 815, 829 (E.D. Mich. 2001) (O'Meara, J.)  In other words, to show that there is a reasonable probability that the result of the proceeding would have been different, as required to establish prejudice, "[i]t is not sufficient to show that, but for counsel's alleged errors he would have been convicted after a trial instead of after entering a guilty plea." *Id.*; *see also*, *Thirkield*, 199 F. Supp. 2d at 655; *Holtgreive*, 174 F. Supp. 2d at 587.

Here, petitioner did not have a viable defense that he was guilty only of the lesser included offense of assault with intent to commit great bodily harm.  First, petitioner admitted at the plea that he intended to kill the victim when he assaulted her.  *See* Plea Tr., at 11-12.  Further, the evidence at the preliminary examination showed that petitioner repeatedly stabbed the victim with a knife about the head and face in his mother's kitchen.  *See* Prelim. Exam. Tr., at 10-11.  When she fled outside, he followed her and continued to stab her.  *See id.* at 13.  After she fell, petitioner stopped stabbing her, but indicated that he was going to kill both the victim and himself.  *See id.* at 40.  They eventually went back inside, where petitioner attempted to assist the victim and give her water.  However, when the police arrived at the home, petitioner indicated that he was not going back to prison, dragged the victim back into the kitchen, and attempted to stab her again.  *See id.* at 15-17, 44.  The police themselves intervened to end the assault, and likely would have corroborated the victim's testimony concerning the last portion of the assault.  *See* Plea Tr., at 12; Sentence Tr., at 5.  Indeed, petitioner again admitted in the presentence report that he was trying to kill the victim.  *See id.*  Further, at sentencing, petitioner indicated that he pleaded guilty "because I didn't want to waste everybody's time, the Court's time.  I was wrong for what I did." *Id.* at 4.  In light of

petitioner's expressed reason for pleading guilty, repeated admissions that he intended to kill the victim, and the substantial evidence of petitioner's intent to kill presented at the preliminary examination, there is not a reasonable probability that, had counsel explained to petitioner the possibility of a lesser offense conviction, petitioner would have both decided to proceed to trial and been convicted of the lesser offense of assault with intent to commit great bodily harm. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on his plea validity and ineffective assistance of counsel claims.

E.     *Appellate Delay (Claim III)*

Petitioner also contends that he is entitled to habeas relief based on the delay in appointing appellate counsel. The Court should conclude that petitioner is not entitled to habeas relief on this basis.

The Michigan Constitution was amended in 1994 by the adoption of Proposal B to provide, in relevant part, that "except as provided by law an appeal by an accused who pleads guilty or nolo contendere shall be by leave of court." MICH. CONST. art. I, § 20. Pursuant to this provision, Michigan courts, in most cases, began to deny indigent defendants appointed counsel to pursue applications for leave to appeal from plea-based convictions, a practice subsequently codified by the Michigan legislature. *See Kowalski v. Tesmer*, 543 U.S. 125, 127 (2004); MICH. COMP. LAWS § 770.3a. Consistent with this state practice, the trial court denied petitioner's initial requests for appointment of appellate counsel. However, in *Halbert v. Michigan*, 545 U.S. 605 (2005), the Court held that this practice of denying counsel for the preparation of an application for "first-tier" appellate review was unconstitutional. Subsequent to *Halbert* and in accordance with that decision, the trial court appointed appellate counsel for petitioner, and petitioner was allowed to file a delayed

15

application for leave to appeal in the Michigan Court of Appeals. The court of appeals denied the application for lack of merit in the grounds presented. Petitioner contends that the trial court's delay in appointing appellate counsel entitles him to have his conviction vacated. The Court should disagree.

In the first place, petitioner's contention that the trial court's initial denial of appointed counsel was erroneous is incorrect in light of the state of the law at the time that decision was made. As noted above, at the time of petitioner's plea-based conviction, the trial court's denial of appointed appellate counsel was fully consistent with Michigan law. It is true that the Supreme Court held this practice unconstitutional in *Halbert*. It is equally true, however, that the *Halbert* rule does not apply retroactively to cases which were final at the time *Halbert* was decided. *See Simmons v. Kapture*, 516 F.3d 450, 451 (6th Cir. 2008) (en banc); *People v. Maxson*, 482 Mich. 385, 388-99, 759 N.W.2d 817, 819-25 (2008). Because petitioner's conviction was final well before *Halbert* was decided, petitioner cannot benefit from that rule and the trial court's failure to appoint counsel at that time provides no basis for vacating petitioner's conviction.

Nevertheless, prior to the non-retroactivity determinations in *Simmons* and *Maxson*, the Michigan courts established procedures for the appointment of appellate counsel to defendants whose plea-based convictions pre-dated *Halbert*, allowing for the appointment of counsel and the ability to file a delayed application for leave to appeal in the Michigan Court of Appeals. *See, e.g.*, *People v. Corn*, 477 Mich. 903, 722 N.W.2d 869 (2006). That procedure was followed in petitioner's case, and he had the benefit of presenting an application for leave to appeal prepared by counsel. Petitioner nevertheless contends that this delay entitles him to habeas relief. The Court should disagree. Petitioner was granted something–a new opportunity to appeal with the benefit of

16

counsel's assistance–to which he was not constitutionally entitled under *Simmons* and *Maxson*. The delay in providing to petitioner a benefit which the Constitution did not obligate the state to provide cannot provide a basis for habeas relief under a state which limits the availability of such relief to persons "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *cf. Marrero v. White*, No. 06-13953, 2009 WL 3190419, at *6 (E.D. Mich. Sept. 28, 2009) (where petitioner was eventually appointed counsel under *Halbert*, delay in appointing counsel did not provide basis for habeas relief).

Further, even were the Court to treat petitioner's claim as a true claim of appellate delay, he would not be entitled to habeas relief. As a number of courts have held, a "petitioner whose direct criminal appeal has now been decided and whose conviction has been affirmed is not entitled to habeas relief based solely on delay in adjudicating his or her appeal, unless the petitioner can show actual prejudice to the appeal, itself, arising from the delay." *Harris v. Champion*, 15 F.3d 1538, 1566 (10th Cir. 1994); *accord Allen v. Duckworth*, 6 F.3d 458, 460 (7th Cir. 1993); *Muwwakkil v. Hoke*, 968 F.2d 284, 285 (2d Cir. 1992). As the Seventh Circuit explained in *Allen*, a habeas petition "is moot if winning it would give the petitioner nothing." *Allen*, 6 F.3d at 460. Although an inordinate delay in processing an appeal may constitute a due process violation, once the appeal has been decided against petitioner winning on the habeas claim would do nothing for him. He is not entitled to any earlier release if the underlying appellate claims are meritless because, as the *Allen* court explained,

> [h]abeas corpus is not a compensatory remedy. The object is not to make whole someone who has suffered a loss; it is to determine whether a person is being confined in violation of basic norms of legality. It is conceivable that delay in processing an imprisoned defendant's appeal might make his continued imprisonment unlawful, but once the delay ends with an appellate decision not claimed to be invalid by reason of delay, as in this case, any ground for ordering him

17

> released evaporates. The petitioner was duly convicted, and the conviction upheld, if belatedly, in an appellate decision not claimed to be infected by any error that would justify his release on habeas corpus. He should serve his time. Any harm is collateral, and is redressable, in principal at least, by a civil rights suit for damages.

*Allen*, 6 F.3d at 460; *see also*, *Mullins v. Allen*, No. 96-2362, 1997 WL 809976, at *2 (6th Cir. Dec. 18, 1997) (no prejudice warranting habeas relief where Michigan Court of Appeals granted petitioner right to file late appeal). Because petitioner's underlying appellate claims were meritless, the court of appeals has resolved those claims by denying petitioner's application for leave to appeal for lack of merit in the grounds presented, and the claims do not provide any basis for habeas relief, and because petitioner has alleged no other prejudice arising from the delay, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

F.    *Conclusion*

In view of the foregoing, the Court should conclude that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.    NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis*

*v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court.  The response shall address specifically, and in the same order raised, each issue contained within the objections.

                                                     s/Paul J. Komives  
                                                     PAUL J. KOMIVES  
                                                     UNITED STATES MAGISTRATE JUDGE

Dated: 11/3/09

> The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on November 3, 2009.
>
>                                   s/Eddrey Butts  
>                                   Case Manager